**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**RALPH BUCK PHILLIPS,**

                                    **Plaintiff**,


                    **v.**                                                      **9:08-CV-878**
                                                                                **(FJS/ATB)**

**RICHARD ROY, Inspector General, New York**
**State; GEORGE SEYFERT, Deputy Inspector**
**General, New York State; DALE ARTUS,**
**Superintendent, Clinton Correctional Facility;**
**DONALD SELSKY, Assistant Commissioner,**
**New York State Department of Correctional Services;**
**ALEC FRIEDMAN, Rabbi, Clinton Correctional**
**Facility; B. LeCUYER, Nurse Administrator,**
**Clinton Correctional Facility, A. LASHWAY;**
**Nurse Practitioner, Clinton Correctional Facility;**
**S. RACETTE, Deputy Superintendent of Security, Clinton**
**Correctional Facility; D. JARVIS, Inmate Records**
**Coordinator, Clinton Correctional Facility; ROY ANO,**
**Counselor, Clinton Correctional Facility; JOSEPH**
**PUCELLI, Counselor, Clinton Correctional Facility;**
**W. ALLAN, Lieutenant, Clinton Correctional Facility;**
**M. BOSCO, Mental Health, Clinton Correctional**
**Facility; LEE MARTIN, Corrections Officer, Clinton**
**Correctional Facility; T. SAUNDERS, Corrections**
**Officer, Clinton Correctional Facility; MILLER, Lieutenant,**
**Clinton Correctional Facility; E. BOUISSEY, Correctional**
**Officer, Clinton Correctional Facility; K. HICKS, Sergeant,**
**Clinton Correctional Facility (SHU); J. TROTTIER,**
**Investigator, Inspector General's Office; BRIAN FISCHER,**
**Commissioner, New York State Department of Correctional**
**Services (DOCS); LUCIEN LeCLAIR, Jr., Deputy**
**Commissioner of Correctional Facilities (DOCS); D. UHLER,**
**Captain Security (SHU); T. BROUSSEAU, Inmate Grievance**
**Program Supervisor; F. HENDERSON, Deputy Superintendent**

of Security, Elmira Correctional Facility; M. KIRKPATRICK,
Lieutenant (C.E.R.T.) (DOCS); R. MARINACCIO (C.E.R.T.)
(DOCS); K. LEBEL, Corrections Officer (C.E.R.T.) (DOCS);
T. DOYLE, Corrections Officer (C.E.R.T.) (DOCS); CURTIS
DROWN, Hearing Officer, Clinton Correctional Facility; and
JOHN DOE,

                                    **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**RALPH BUCK PHILLIPS**
**06-B-3437**
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**              **JAMES B. McGOWAN, AAG**
**STATE ATTORNEY GENERAL**              **JAMES SEAMAN, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, an inmate, filed a complaint *pro se* pursuant to 42 U.S.C. § 1983, alleging twenty-

eight causes of action arising from events at two separate correctional facilities.  Plaintiff's

allegations include the use of excessive force and failure to prevent such conduct, deprivations of

procedural due process, cruel and unusual punishment, violation of Plaintiff's right to practice his

chosen religion, and retaliation for filing grievances and raising complaints regarding prison

conditions.

Plaintiff commenced this action on August 18, 2008.  *See* Complaint.  Plaintiff filed an amended complaint on December 8, 2008, and a second amended complaint on December June 19, 2009.  *See* Dkt. Nos. 10, 52.  In his second amended complaint, he sought, among other things, an injunction ordering Defendants to release him from administrative segregation, or place him under involuntary protective custody, or continue his confinement to a special housing unit ("SHU") under Directive 499 § 301.5.  Plaintiff further sought compensatory damages in the amount of $450,000 and punitive damages in the amount of $10,000 against each Defendant.  Defendants moved to dismiss Plaintiff's second amended complaint on September 15, 2009.  *See* Dkt. No. 76.  Magistrate Judge Peebles issued a Report and Recommendation on September 27, 2010, in which he recommended that the Court grant Defendants' motion in part and deny it in part.  *See* Dkt. No. 83, Report and Recommendation ("Report-Rec.").

Currently before the Court is Magistrate Judge Peebles' Report and Recommendation, Plaintiff's objections thereto, and Defendants' objections thereto.  Specifically, Plaintiff objects to Magistrate Judge Peebles' recommendation that the Court dismiss Plaintiff's fourteenth cause of action, that Defendants Fischer, Roy, and LeClair conspired to hold Plaintiff in administrative segregation.  *See* Dkt. No 88, Plaintiff's Objections ("Pltf. Obj.") at 4-8.  Defendants object to the fact that Magistrate Judge Peebles did not recommend that the Court dismiss Plaintiff's complaint in its entirety and assert that the Court should dismiss Plaintiff's first, second, third, fourth,  seventh, eighth, ninth, tenth, twelfth, thirteenth, fifteenth, nineteenth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, and twenty-seventh causes of action.

## II. BACKGROUND[1]

Plaintiff is a New York State prison inmate who was convicted of aggravated murder, attempted murder, and escape.  Plaintiff's convictions for murder and attempted murder arose from his shooting and killing two New York State Troopers following his escape from Erie County jail.[2] *People v. Phillips*, 56 A.D.3d 1163 (4th Dep't 2008).  After these convictions, Plaintiff entered DOCS custody at the Elmira Correctional Facility ("Elmira") on December 21, 2006.  Plaintiff later transferred to the Clinton Correctional Facility ("Clinton").  Plaintiff's complaint includes events that occurred at both Elmira and Clinton.

## III. DISCUSSION

### A.   Standard of review

Section 636 of Title 28 of the United States Code states that "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When reviewing a magistrate judge's report and recommendation, a district court judge "make[s] a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made."  *Id.*  However, where "an objecting "'party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only

---

[1] The Court assumes familiarity with the facts as presented in Magistrate Judge Peebles' Report and Recommendation.  *See* Report-Rec.

[2] Typically, the circumstances underlying an inmate's conviction are not relevant to that inmate's challenges to his conditions of confinement.  Here, however, Plaintiff alleges that corrections officers exhibit hostility toward him due to his criminal history.  *See generally* Dkt. No. 52, Second Amended Complaint.

for clear error.""" *Webster v. Fischer* 694 F. Supp. 2d 163, 169 (N.D.N.Y. 2010) (quoting *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (quoting *McAllan v. Von Essen*, 417 F. Supp. 2d 672, 679 (S.D.N.Y. 2007))).

Courts use a two-step inquiry when deciding a Rule 12(b)(6) motion.  First, they isolate the moving party's legal conclusions from its factual allegations.  Second, they presume the factual allegations to be true and examine them for plausibility.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain more than a "blanket assertion" of entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).  Rather, *Twombly* added a requirement that a pleading show plausible grounds for relief to the requirement of Federal Rule of Civil Procedure 8(a)(2) that a pleading "'sho[w] that the pleader is entitled to relief.'"  *Id*. at 557 (quotation omitted).  The Supreme Court explained this standard in *Ashcroft*, where it set forth that to withstand a motion to dismiss, a pleading must be "plausible on its face" such that it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 129 S. Ct. at 1949 (citation omitted).

When deciding a 12(b)(6) motion, a court may "consider documents attached to or incorporated by reference in [a] complaint."  *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (citation omitted).  Even where a "'plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may . . . take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  *Int'l Audiotext Network, Inc. v. Am. Tel.*

-5-

*& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quotation omitted).

**B.      Administrative segregation and due process claims**[3]

Plaintiff's fourth, fifth, eleventh, thirteenth, and fourteenth causes of action address his

confinement in administrative segregation and the periodic review of this determination.

The Supreme Court has held that the placement of an inmate into administrative segregation

may implicate the Fourteenth Amendment where the restraints placed on the inmate constitute an

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Second Circuit has held that confinement for a

period of less than 101 days does not typically constitute such a hardship.  *See Colon v. Howard*,

215 F.3d 227, 232 n.5 (2d Cir. 2000).  Although the decision to enter an inmate into administrative

segregation is typically one made by prison officials, inmates are entitled to procedural safeguards.

To this end, due process requires (1) written notice of the charges; (2) the opportunity to appear at a

disciplinary hearing to present witnesses and evidence; (3) a written statement by the hearing officer

explaining his or her decision and reasoning; and (4), in some situations, the right to call witnesses

and present evidence in his defense.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  The

hearing officer's disciplinary determination must have the support of at least "some evidence."

*Superintendent v. Hill*, 472 U.S. 445, 447 (1985).

---

[3] In the New York State prison system, a regulatory scheme governs the practice of
administrative segregation, and it requires that an inmate receive a hearing within fourteen days
of entering administrative segregation.  *See* 7 N.Y.C.R.R. § 301.4(a).  The N.Y.C.R.R. also
provides for post-segregation review of the inmate's situation every sixty days.  *See* 7 N.Y.C.R.R.
§ 301.4(d).  Administrative segregation inmates live in SHU and are subject to most of the
disciplinary restrictions of SHU inmates.  *See Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 248-
49 (W.D.N.Y. 1998) (footnote omitted).

However, the *Sandin* decision eroded some of *Wolff's* safeguards.  In *Sandin*, the Supreme Court held that an inmate's confinement in disciplinary segregation may not constitute such a significant deprivation as to implicate a liberty interest.  *See Sandin*, 515 U.S. 485-86.  To determine when the full array of *Wolff* rights applies, the Court considered (1) whether confinement in disciplinary segregation reflected the conditions of other forms of discretionary confinement; (2) whether the decision to place an inmate in administrative segregation presented a major disruption to his environment; and (3) whether the decision affected the duration of the inmate's sentence.  *See id* at 486-87.

Further, "where a prisoner's placement in restrictive confinement has both a punitive *and* an administrative, non-punitive basis, the placement decision will not be found to have impaired a protected liberty interest."  *Rosenberg v. Meese*, 622 F. Supp. 1451, 1469 (S.D.N.Y. 1985) (citing *Sher v. Coughlin*, 739 F.2d 77, 81-82 (2d Cir. 1984)) (other citation omitted).

Regarding the hearing itself, "inmates have a right to 'be judged by a fair and impartial hearing officer.'"  *Kingwood v. Rourke*, No. 9:97CV1906, 2002 WL 31309240, *4 (N.D.N.Y. Sept. 3, 2002) (quotation omitted).  As a consequence, the participation of an insufficiently impartial hearing officer may infringe on a plaintiff's due process rights.  *See Wolff*, 418 U.S. at 571.  However, the mere "[p]reparation of an [administrative segregation] recommendation is not a basis for a § 1983 claim[;]" rather, a prisoner's due process rights remain intact so long as he has an opportunity to rebut the charges against him at a hearing.  *Edmonson*, 21 F. Supp. 2d at 254-55 (citations omitted).

Here, Plaintiff's fourth cause of action implicates his due process rights.  First, Plaintiff indicates that he experienced "years" of hardship because as a result of his hearing before Defendant

Drown, Plaintiff lived in administrative segregation. *See* Second Amended Complaint at 37.

Although this is a vague statement, it indicates that Plaintiff lived in administrative segregation for

more than 101 days. Moreover, Plaintiff's allegation against Defendant Drown, taken as true, is

sufficient to demonstrate a level of predisposition against Plaintiff on the part of Defendant Drown.

Plaintiff is entitled to an impartial hearing officer, and Defendant Drown's alleged statements

indicate a lack of impartiality. Accordingly, the Court adopts Magistrate Judge Peebles' Report and

Recommendation and denies Defendants' motion to dismiss Plaintiff's fourth cause of action.[4]

As to Plaintiff's fifth cause of action, against Defendant Seyfert, Plaintiff merely alleged that

Defendant Seyfert filed an administrative segregation recommendation based upon false and

misleading statements. However, since the preparation of an administrative segregation

recommendation cannot serve as the basis of a § 1983 claim, and since Plaintiff had the opportunity

to rebut these allegedly false charges at a hearing, the Court adopts Magistrate Judge Peebles' Report

and Recommendation, finds that Plaintiff has not stated a viable claim, and grants Defendants'

motion to dismiss Plaintiff's fifth cause of action.

Regarding Plaintiff's eleventh and thirteenth causes of action, Plaintiff does not deny that

Defendants conducted periodic post-segregation reviews. Instead, Plaintiff makes conclusory

allegations that such reviews were "sham[s]" and "mere formalities." *See* Second Amended

Complaint at ¶¶ 22, 24. However, without allegations to indicate actual bias, Plaintiff's claims are

implausible and insufficient to satisfy the *Iqbal* standard. Accordingly, the Court adopts Magistrate

Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's

---

[4] It should be noted that Plaintiff does not object to Magistrate Judge Peebles' finding that the hearing process likely met the stringent requirements of *Wolff*. *See* Report-Rec. at 12-13.

eleventh and thirteenth causes of action.

### C.    Allegedly false misbehavior report

To state a claim for retaliation regarding the filing of a false misbehavior report, a plaintiff must allege that a defendant not only filed the report but that his motivation to do so relates to the plaintiff having engaged in protected activity.  *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).  When examining a complaint for allegations of retaliatory animus, courts typically look for "[t]ypes of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation[, such as] . . . temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives."  *Barclay v. N.Y.*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007) (citations omitted).

Here, Plaintiff fails to allege any facts to support a claim of retaliation.  First, Plaintiff claims that Defendants filed these allegedly false misbehavior reports to retaliate against him for his murder of two New York State Troopers.  *See* Second Amended Complaint at ¶ 30.  Even assuming this is true, Plaintiff's killing of two police officers is criminal conduct, and it is obviously not protected by the constitution or by statute.  In addition, the misbehavior report was not false.  Plaintiff admitted performing the conduct which resulted in the misbehavior report.  *See* Dkt. No. 67, Exhibit "2" attached thereto, McGowan Declaration.  Accordingly, the Court adopts this portion of Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's seventeenth cause of action.

**D.    Access to the courts**

Inmates have a well-established constitutional right to meaningful access to the courts.  *See*

*Bounds v. Smith*, 430 U.S. 817, 822 (1977).  The Supreme Court has held that to state a claim for

denial of access, an inmate "must . . . demonstrate that the alleged shortcomings in the library or

legal assistance program hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S.

343, 351 (1996).  A mere delay in working on a legal action or communicating with the court does

not constitute a constitutional violation.  *See Jermosen v. Coughlin*, 877 F. Supp. 864, 871

(S.D.N.Y. 1995) (citations omitted).

Plaintiff's second amended complaint states that Defendants Racette and Jarvis interfered

with his access to the courts when they denied him permission to receive a contact visit on July 4,

2007, from a paralegal, Wendy Gambles.  *See* Second Amended Complaint at ¶ 23.  Plaintiff alleged

that this deprived him of the ability to give legal documents to Ms. Gambles, which interfered with

his ability to consolidate a pending appeal with a potential appeal.  *See id*.

On this issue, the Court respectfully disagrees with Magistrate Judge Peebles' Report and

Recommendation.  Plaintiff alleges that his prejudice took the form of a delayed ability to

consolidate a pending appeal with a potential appeal.  Although this may have caused Plaintiff some

inconvenience, Defendants did not take any action that actually prevented Plaintiff from pursuing

either of these appeals, one of which was not yet at the appellate stage.  Moreover, Plaintiff has not

produced any evidence indicating that he experienced an adverse judicial decision in either of these

actions because of the alleged denial of access to courts.  In fact, Plaintiff ultimately pursued these

appeals, and lost.  *See People v. Phillips*, 56 A.D.3d 1163 (4th Dep't 2008); *People v. Phillips*, 56

A.D. 3d 1168 (4th Dep't 2008).  Accordingly, the Court respectfully rejects Magistrate Judge

Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twelfth

cause of action.


E.      **Excessive force/Failure to intervene**

        *1. Excessive force*

        An Eighth Amendment claim for excessive force has an objective and a subjective element.

*See Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).  The objective element focuses on the effect

of a defendant's conduct, while the subjective element focuses on the defendant's motive.  *See id.*

        The objective element is "contextual and responsive to 'contemporary standards of decency.'"

*Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quotation omitted).  The Second Circuit has held that,

"[w]here a prison official acts 'maliciously and sadistically,' 'contemporary standards of decency

always are violated.'"  *Abreu v. Nicholls*, 368 Fed. Appx. 191, 193 (2d Cir. 2010) (quoting *Wright*

554 F.3d at 268-69).  Thus, "[i]n assessing [the objective] component, the court must ask whether

'the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.'"

*Wright*, 554 F.3d at 268 (quotation omitted).

        The subjective element considers whether the prison official acted wantonly.  Regarding this

element, "[t]he 'core judicial inquiry' . . . [is] . . . 'whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Wilkins v. Gaddy*,

130 S. Ct. 1175, 1178 (2010) (quoting [*Hudson v. McMillan*,] 503 U.S. [1,] 7, 112 S. Ct. 995

[(1992)]) (other citation omitted).  Courts may consider the extent of the injury that the plaintiff

inmate suffered as an indication of whether the amount of force was reasonably necessary, but a

plaintiff need not sustain a serious injury to maintain an excessive force claim.  *See id.*

### 2. Failure to intervene

A corrections officer who witnesses an assault upon an inmate may be responsible for any resulting constitutional deprivation.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).  In addition, law enforcement officials are under an affirmative duty to intervene where other officers violate the constitutional rights of an individual in their presence.  *See Mowry v. Noone*, No. 02-CV-6257, 2004 WL 2202645, *4 (W.D.N.Y. Sept. 30, 2004) (citations omitted); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (stating that "[f]ailure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be" (citations omitted)).

To state a claim for failure to intervene, a plaintiff must show that someone other than the defendant engaged in the use of excessive force and that the defendant (1) had actual knowledge of this use of excessive force, (2) had a realistic opportunity to intervene and prevent the harm from occurring, and (3) intentionally refused or failed to take reasonable measures to end the use of excessive force.  *See Curley*, 268 F.3d at 72.  Mere inattention does not constitute deliberate indifference.  *See Cicio v. Graham*, No. 9:08-CV-534, 2010 WL 980272, *13 (N.D.N.Y. Mar. 15, 2010) (citation omitted).

Courts have found that, where officers assault an individual so quickly that a fellow officer does not have a realistic opportunity to intercede, the witness officer is not liable for the excessive force.  *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); *see also Cusamano v. Sobek*, 604 F. Supp. 2d 416, 428 n.9 (N.D.N.Y. 2009) (holding that where an attack is "sudden and brief," witnessing officers do not have a realistic opportunity to prevent it (citations omitted)); *Wright v. City of Waterbury*, No. 3:07-CV-306, 2011 WL 1106217, *6 (D. Conn. Mar. 23, 2011) (holding that

-12-

an officer who witnessed an attack that began without warning, and lasted two or three seconds, did not have a reasonable opportunity to intercede).

### 3. Plaintiff's causes of action

Plaintiff's first cause of action alleges that Defendants Kirkpatrick, Marinaccio, Lebel, and Doyle assaulted him upon his arrival at Elmira.  *See* Second Amended Complaint at ¶¶ 6-8. Specifically, Plaintiff asserts that, after Defendants frisked him and attired him in prison garb, Defendant Lebel grabbed him by the throat and stated, "Your days of media glory are over," and then pushed him against a wall, causing his head to slam into the wall with some force.  *See id*. at ¶ 6.  Defendant Lebel then kept Plaintiff pinned to the wall as Defendant Doyle struck Plaintiff's legs with the heel of his right hand.  *See id*. at ¶ 7.  Only when Defendant Henderson, the Deputy Superintendent of Security, arrived on the scene did Defendants cease this conduct.  *See id*. at ¶ 8.

Plaintiff's third cause of action cites the same facts contained in paragraphs six through eight of the second amended complaint and alleges that Defendants Lebel and Doyle assaulted Plaintiff with the intent to inflict physical harm.

Plaintiff's second cause of action also cites the same facts and alleges that Defendants Kirkpatrick, Marinaccio, and Henderson watched the assault upon Plaintiff and failed to intervene.

Regarding the excessive force causes of action, Plaintiff's allegations meet both elements of the excessive force inquiry.  The statement that Defendant Lebel made, assuming it is true, evidences a malicious intent.  As to the objective prong, such a malicious intent violates contemporary standards of decency.  As to the subjective prong, Defendant Lebel's statement indicates that he was not acting in good faith to maintain order but that he wanted merely to inflict

pain on Plaintiff.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's first and third causes of action.

In light of the length of the alleged attack, Plaintiff's second cause of action is weaker than his claims of excessive force.  Plaintiff alleged that only a few seconds elapsed between the commencement of the attack and Defendant Henderson's arrival on the scene.  *See* Second Amended Complaint at ¶ 8.  Upon seeing the attack, Defendant Henderson told Defendants Doyle and Lebel to "knock it off."  *See id*.  Defendants Doyle and Lebel continued the attack briefly, at which point Defendant Henderson said more forcefully, "knock that shit off!"  *See id*.  The attack had only lasted for a few seconds when Defendant Henderson arrived, briefly assessed the situation, and told Defendants to cease their actions.  Such action upon arriving at the scene of a short and sudden attack is reasonable.  *See O'Neill*, 839 F.2d at 11; *see also Cusamano*, 604 F. Supp. 2d at  428-29; *Wright*, 2011 WL 1106217, at *6*.  Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's second cause of action as it relates to Defendant Henderson.

However, because Plaintiff alleges that Defendants Kirkpatrick and Marinaccio witnessed the entire series of events, from the frisk through the entire assault, it is plausible that they had a reasonable opportunity to intervene.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's second cause of action as it relates to Defendants Kirkpatrick and Marinaccio.

**F.      Religious exercise**

Under the First Amendment, inmates have the right to the free exercise of their chosen

religion.  *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417

U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974)).  However, this right is subject to legitimate

penal concerns.  *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).  The Supreme Court

set forth a framework of analysis for the free exercise claims of inmates in *O'Lone v. Estate of*

*Shabazz*, 482 U.S. 342, 349 (1987), and *Turner v. Safley*, 482 U.S. 78, 84-87 (1987).  This

framework relies on analyzing the reasonableness of prison-imposed restrictions on religious

exercise, and it is less restrictive than tests that the Court has applied to the alleged infringement of

other fundamental constitutional rights.  *See O'Lone*, 482 U.S. at 349 (citation omitted).

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right will

withstand a constitutional challenge if that regulation is reasonably related to legitimate penological

interests.  *See id.* (quoting *Turner*, 482 U.S., at 89, 107 S. Ct., at 2261) (footnote omitted).  The

same standard governs a decision to deny an individual inmate the ability to engage in a religious

exercise.  *See Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citation omitted).[5]

The court must examine whether the challenged action has a legitimate, rational connection

to the governmental objective; whether prisoners have alternative means of exercising the burdened

---

[5] The Second Circuit has created a three-step process to analyze a free-exercise claim,
stating that "a court must determine (1) whether the practice asserted is religious in the person's
scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of
the prison officials infringes upon the religious belief; and (3) whether the challenged practice of
the prison officials furthers some legitimate penological objective."  *Farid v. Smith*, 850 F.2d
917, 926 (2d Cir. 1988) (citations omitted).  The third prong of this test is at issue in the instant
case; and, therefore, a "reasonably-related" analysis is appropriate here.

right; the impact of accommodating that right on guards, inmates, and prison resources; and the exercise of alternative means of facilitating the exercise of that right that only have a *de minimis* adverse effect on the valid penological interests.  *See King v. Bennett*, No. 02-CV-349Sr, 2007 WL 1017102, *4 (W.D.N.Y. Mar. 30, 2007) (citing *Salahuddin*, 467 F.3d at 274) (other citation omitted).  Once prison officials identify a legitimate penal interest to justify their actions, the burden shifts to the plaintiff to prove that the defendant's concerns are irrational.  *See Ford*, 352 F.3d at 595.

Plaintiff's seventh cause of action alleges that Defendant Racette deprived Plaintiff of the ability to participate in his Native American religious ceremonies.  The Second Circuit has held that, to prevail on a motion to dismiss, defendant prison officials must provide reasons for any decisions to deny inmates access to religious services.  *See Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989).  Defendants have never presented a reason for the alleged delay.  It remains unclear for how long Plaintiff was unable to attend religious services or if he has ever been permitted to so attend.  Affording Plaintiff every reasonable inference, he has stated a plausible claim for a First Amendment violation, a claim which Defendants have not rebutted directly.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's seventh cause of action.

Plaintiff's eighth cause of action alleges that Defendant Friedman hindered Plaintiff's ability to freely practice his religion when he ignored Plaintiff's requests to order herbs for the purposes of smudging.[6]  *See* Second Amended Complaint at ¶ 16.  Plaintiff eventually received the herbs.  *See*

---

[6]  The practice of smudging involves burning sacred herbs before and during the incantation of prayers.

-16-

*id.*  The Northern District has found that prison officials do not curtail an inmate's First Amendment rights where the inmate "wait[s] longer than he [thinks is] necessary" to receive religious materials. *Miller v. Fischer*, No. 9:07-CV-942, 2009 WL 7760224, *8 (N.D.N.Y. Sept. 22, 2009) (citation omitted).  Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's eighth cause of action.

Plaintiff's ninth cause of action alleges that, in January of 2008, he contacted Defendant S.E. Racette regarding the purchase of either matches or a lighter so that he could light the herbs for the purposes of smudging.  *See* Second Amended Complaint.  Plaintiff further alleges that Defendant Hicks deprived Plaintiff of the ability to practice his religion when he confiscated the cigarette lighter that Plaintiff had been given to burn and smudge herbs.  *See* Second Amended Complaint at ¶¶ 17-18, 41.

Given Plaintiff's history with explosives, the state has a legitimate penological interest in denying him access to a lighter.  On October 1, 2007, a hearing officer found Plaintiff guilty of trying to introduce explosives to the prison facility, among other charges.[7]  *See* Dkt. No. 46-5, Exhibit "D" attached thereto, Tier III hearing decision.  An Article 78 judge upheld this ruling on appeal.  *See* Dkt. No. 76, Exhibit "7" attached thereto, Article 78 decision, at 4.

Prison officials act in accordance with legitimate penological interests where they deny an inmate religious items because that particular inmate's history indicates that he may put the religious

---

[7] This situation arose from a letter that Plaintiff attempted to send to Wendy Gambles. *See* Dkt. No. 46-5, Exhibit "C" attached thereto, Tier III Hearing Transcript.  In this letter, Plaintiff discussed the possibility of Ms. Gambles obtaining an anti-tank gun, an M-203 (a type of grenade launcher), and a bottle containing bird flu taped to an M-100 (a type of explosive device) to facilitate his escape from prison.  *See* Dkt No. 46-5, Exhibit "B," Plaintiff's letter to Wendy Gambles.

items to a destructive use.  *See Miller v. Fischer*, No. 07-CV-942, 2011 WL 1100094 (N.D.N.Y. Mar. 24, 2011) (adopting a Report and Recommendation that found that the defendants possessed a legitimate penological interest and recommended that the court deny the plaintiff's First Amendment cause of action where the plaintiff, who had a history of marijuana use in prison, wished to obtain incense, a marijuana masking agent, for religious purposes).  Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's ninth cause of action.

## G.      Deliberate medical indifference

To state a claim for deliberate medical indifference successfully, a plaintiff must demonstrate that the defendant deliberately ignored a serious medical need.  *See Wallace v. Dawson*, 302 Fed. Appx. 52, 54 (2d Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).  Such a statement involves meeting an objective "'medical need'" element and a subjective "'deliberate indifference' element."  *Lopez v. Fischer*, No. 07CV0365, 2011 WL 1233107, *9 (W.D.N.Y. Mar. 30, 2011) (citing *Smith v. Carpenter*, 316 F.3d 178, 183-184 (2d Cir. 2003).

A plaintiff meets the objective element where "'the alleged deprivation [is] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'"  *Wallace*, 302 Fed. Appx. at 54 (quoting [*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)]).  Where an inmate plaintiff alleges that prison medical personnel provided care but that the care was inadequate, the court's inquiry focuses on the alleged inadequacy, rather than the seriousness of the plaintiff's condition.  *See Williams v. Fischer*, No, 9:09-CV-1258, 2011 WL

1812527, *4 (N.D.N.Y. Feb. 9, 2011) (citing *Salhuddin* [*v. Goord*], 467 F.3d [263,] 280 [(2d Cir. 2006)]).

To meet the subjective element, a plaintiff must allege that "'the charged official . . . act[ed] with a sufficiently culpable state of mind,'" which has been held to mean "'something more than mere negligence' and akin to criminal recklessness." *Wallace*, 302 Fed. Appx. at 54 (citing [*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)]).  Regarding the subjective element, "a prisoner's disagreement over the course of treatment rendered by prison medical personnel is not actionable under section 1983." *Williams*, 2011 WL 1812527, at *5 (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970)).  The Northern District has applied the reasoning from *Hyde* to instances where an inmate plaintiff received different pain medication than he requested.  *See Ramos v. Johnson*, No. 09-CV-0899, 2011 WL 817526, *9-*10 (N.D.N.Y. Feb. 7, 2011).  In *Ramos*, the Northern District held that where prison medical personnel failed to honor the plaintiff's choice of pain medication,[8] the plaintiff did not have a basis for claiming an Eighth Amendment violation for deliberate medical indifference.  *See id*.

Here, Plaintiff alleged that he was given a different pain medication than the one he requested.  Plaintiff does not allege that he was refused medical care; he merely alleges that he received inadequate care.  At this point, such an alleged inadequacy is sufficient to satisfy the objective prong of the medical indifference test.  Plaintiff's allegations also satisfy the subjective prong, albeit barely.  Plaintiff's request for Neurontin instead of Ibuprofen may appear to be a simple disagreement regarding the appropriate course of action for treating his back pain.  However,

---

[8] In *Ramos*, the plaintiff requested Tylenol; but prison medical personnel were concerned about his elevated liver enzyme levels and, to avoid possible liver damage, tried to give the plaintiff a combination of Neurontin and Ultram.  *See Ramos*, 2011 WL 817526, at *9.

-19-

Plaintiff alleged that he requested the stronger Neurontin and that prison medical personnel rebuffed him over the course of several months.  Although Defendants treated Plaintiff, their lack of response to Plaintiff's continued complaints of unabated pain could constitute medical indifference.  *See Morrison v. Mamis*, No. 08 Civ. 4302, 2008 WL 5451639, *8 (S.D.N.Y. Dec. 18, 2008) (holding that a prisoner was unable to show deliberate medical indifference where doctors responded to the prisoner's complaints).  Perhaps, by the summary judgment stage, Defendants will be able to show that they possessed a medical purpose for continuing to administer Ibuprofen to Plaintiff; but, for now, Plaintiff's allegations are barely plausible.

Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's tenth cause of action.


**H.     Retaliation**

Inmates may state a retaliation claim under 42 U.S.C. § 1983 where prison officials, motivated by the inmate's exercise of a right protected by the Constitution, take adverse action against that inmate.  *See Franco*, 854 F.2d at 589-90.  However, the Second Circuit has repeatedly cautioned that, since it is easy for inmates to make claims attributing adverse action to retaliatory animus, courts must approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

To state a claim for retaliatory conduct under § 1983, a plaintiff must allege that (1) he engaged in protected conduct; (2) the defendants took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action.  *See Mount Healthy City*

*Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284-86 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation omitted).  Where the plaintiff's allegations meet this standard, the defendants must demonstrate that they would have taken the complained-of action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287.

The Second Circuit has instructed that courts should consider whether the actions that the defendants took would deter a similarly situated individual of ordinary firmness from complaining about prison conditions.  *See Gill*, 389 F.3d at 381; *see also Espinal v. Goord*, 558 F.3d 119, 129 n.7 (2d Cir. 2009); *Lugo v. Van Orden*, No. 9:07-CV-879, 2008 WL 2884925, *4-*5 (N.D.N.Y. July 23, 2008).  The Second Circuit has also warned litigants that "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Where a significant period of time has elapsed between an inmate's retaliated-for behavior and the actual alleged act of retaliation, courts typically find that this lack of temporal proximity precludes a plaintiff from supporting a retaliation claim.  *See Johnson v. Conn., Dep't of Corr.*, 392 F. Supp. 2d 326, 340-41 (D. Conn. 2005) (finding that, where the defendants took the allegedly retaliatory action seven months and ten months after the plaintiff filed a complaint, the plaintiff could not show a causal link between the two events).

Regarding cell searches, courts have ruled that, because "[r]andom cell searches . . . are a necessary and routine part of prison life[,] . . . [e]ven cell searches 'conducted solely for harassment' do not implicate the Constitution[.]"  *Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, *2 (S.D.N.Y. July 22, 2010) (quotation omitted).  Therefore, an inmate plaintiff "'cannot base a retaliation claim against [a group of] defendant[s] based on a cell search.'"  *Id*. (quoting *Bumpus v.*

*Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007)).  However, "the confiscation or destruction of property taken at the time of . . . searches may" constitute a retaliatory action.  *Keesh v. Goord*, No. 04-CV-271A, 2007 WL 2903682, *8 (W.D.N.Y. Oct. 1, 2007) (citation omitted).

Housing transfers may also support a claim for retaliatory action.  *See Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, *15 (S.D.N.Y. Mar. 31, 2006) (holding that a transfer to SHU, where the plaintiff alleged to be noisy and unhygenic, could serve as the basis for a retaliation claim).

Plaintiff's twenty-second cause of action alleges that, on January 22, 2008, Defendants Allan and Bouissey, under the guise of a cell search, ransacked his cell and issued him a fraudulent misbehavior report for possessing "gang material" and "contraband."  *See* Second Amended Complaint.  Plaintiff alleges that Defendants did so in order to retaliate against him for filing grievances related to an alleged assault.  *See id.* at ¶ 35.  The only assault that Plaintiff alleges in his complaint occurred on December 21, 2006, at the Elmira Correctional Facility.  *See id.* at ¶¶ 6-8. Plaintiff filed a second grievance regarding this alleged assault on March 1, 2007.[9]  *See* Dkt. No. 1, Exhibit "2" attached thereto, at 87, March 1, 2007 Grievance.  The nearly eleven-month gap between the filing of Plaintiff's grievance and the search of his cell constitutes such a significant temporal gap that causation between the two events cannot be established.  *See Johnson*, 392 F. Supp. 2d at 341.  Plaintiff's allegations also cannot support a causal connection because the December 21, 2006 assault did not involve Defendants Allan or Bouissey, the Defendants who searched Plaintiff's cell.  *See* Second Amended Complaint at ¶ 35.  Finally, Plaintiff alleges no facts

---

[9] According to this grievance, Plaintiff had attempted to file a grievance earlier, but that document was never filed.  *See* March 1, 2007 Grievance.

to indicate that Defendants Allan and Bouissey had a retaliatory motive to search his cell.  His second amended complaint merely attributes such a motive to Defendants Allan and Bouissey, and it relates a conversation between Plaintiff and another officer that indicated that Plaintiff and Defendant Allan did not get along.  *See id.*  However, Plaintiff makes no allegations which indicate that Plaintiff's filing grievances related to the assault was the cause of this animosity between him and Defendant Allan.  Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this respect and grants Defendants' motion to dismiss Plaintiff's twenty-second cause of action.

Plaintiff's twenty-third cause of action alleges that, on January 28, 2008, Defendants Allan and Trottier ransacked his cell and took newspapers and a legal document,[10] under the guise of a cell search, in retaliation for his filing complaints related to the December 21, 2006 assault.  *See* Second Amended Complaint.  As with Plaintiff's twenty-second cause of action, this claim fails for lack of a causal connection.  The large temporal gap between the two incidents, the fact that each incident involved different defendants, and the fact that Plaintiff alleges only his belief of causation, as opposed to facts, show that the two events are not sufficiently related to support a claim for retaliation.  Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-third cause of action.

Plaintiff's twenty-sixth cause of action alleges that Defendants Uhler and Allan intentionally changed Plaintiff's cell on a number of occasions as a means of retaliation.  *See* Second Amended

---

[10] Plaintiff does not allege denial of access to the courts in this cause of action; nevertheless, this cause of action would not support such a claim.  Plaintiff does not identify what type of document Defendants removed from his cell, nor does he allege that the removal of this document hindered his ability to pursue a nonfrivolous legal claim.  *See Allah v. Greiner*, No. 03 Civ. 3789, 2007 WL 1280657, *6 (W.D.N.Y. Apr. 30, 2007).

Complaint.  Plaintiff does not discuss why Defendants Uhler and Allan might have been retaliating against him.  Plaintiff asserts that the cells to which he relocated were noisy and unsanitary.  *See id*. at ¶ 39.  Since housing transfers can support a claim for retaliation and since the actions for which Defendants were allegedly retaliating are unclear, dismissing this claim at this stage would be premature.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's twenty-sixth cause of action.

Plaintiff's twenty-seventh cause of action alleges that Defendant Hicks, retaliating against Plaintiff for filing grievances, confiscated a cigarette lighter that Plaintiff had previously been allowed to use for the purposes of smudging.  *See* Second Amended Complaint at ¶ 41.  However, these allegations also lack a causal connection.  Plaintiff does not allege that he had filed grievances against Defendant Hicks, nor does he allege any temporal proximity between the grievances he filed and the confiscation of the lighter.  Plaintiff alleges that, when he asked Defendant Hicks why he was removing the lighter, Defendant Hicks said, "because I can."  *See* Second Amended Complaint at ¶ 41.  Although this statement may indicate that the two men did not get along particularly well, it does not suggest that Defendant Hicks was interested in hindering Plaintiff's religious practice in order to punish Plaintiff for filing grievances about the conditions of his confinement.  Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-seventh cause of action.

I.      **Property loss claim**

Where adequate post-deprivation remedies exist, confiscation of an inmate's personal property will not constitute a due process violation.  *See Hudson v. Palmer*, 468 U.S. 517, 533

(1984).  Such remedies are available to inmates in New York State, *see* 7 N.Y.C.R.R. § 1700.3; and the Second Circuit has held that these remedies are adequate and sufficient to preclude a prisoner from maintaining a § 1983 action asserting a loss of due process rights based upon the confiscation of personal property, *see Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (*per curiam*).  Even where an inmate suffers a "'random and unauthorized' [loss of property], courts have found that 'New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion . . . .'" *Cantave v. N.Y. City Police Officers*, No. 09-CV-2226, 2011 WL 1239895, *7 (E.D.N.Y. Mar. 28, 2011) (quoting *Dove v. City of New York*, No. 99 CIV. 3020DC, 2000 WL 342682, at *3 (S.D.N.Y. Mar. 30, 2000)) (other citations omitted).

New York State has ample post-deprivation remedies for inmates who intend to assert a claim based on the loss of personal property.  Here, there is no evidence that Plaintiff pursued these remedies.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grant Defendants' motion to dismiss Plaintiff's eighteenth cause of action.

**J.     Retaliatory mail watch**

The First Amendment guarantees prisoners the right, albeit not an unlimited right, "'to the free flow of incoming and outgoing mail[.]'" *LeBron v. Swaitek*, No. 9:05-CV-172, 2007 WL 3254373, *6 (N.D.N.Y. Nov. 2, 2007) (quoting *Davis [v. Goord*, 320 F.3d 346,] 351 [(2d Cir. 2003)]) (other citation omitted).  However, this right may be abridged without constitutional violation where prison officials have a legitimate penological interest in monitoring the mail.  *See United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996).  Since actions taken toward mail must align with legitimate penological interests, such as prison safety and order, "[c]ourts have

-25-

consistently afforded greater protection . . . to outgoing mail than to incoming mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted).  Nevertheless, the Second Circuit has held that "'where good cause is shown, outgoing mail can be read' without violating inmates' First Amendment rights." *Workman*, 80 F.3d at 698 (quotation and other citation omitted).  The Second Circuit has further held that where prison officials suspect that an inmate wishes to conduct disruptive activities in prison, monitoring that prisoner's mail does not constitute a First Amendment violation.  *See id*. at 699 (finding no violation where prison officials based their monitoring of inmate's mail on overheard telephone conversations in which the inmate conducted drug trades and discussed the commission of contract murders).

Here, Plaintiff has alleged that Defendant Allan tampered with his outgoing and incoming mail, causing strained relations between Plaintiff and the friends and relatives with whom he was in contact by mail.  *See* Second Amended Complaint at ¶ 37.  Plaintiff discovered that Defendants were monitoring his outgoing mail when they held a Tier III misconduct hearing regarding a letter that he attempted to send to Wendy Gambles.  *See* Dkt. No. 46-5, Exhibit "C" attached thereto, Tier III Hearing Transcript.  In this letter, Plaintiff discussed the possibility of Ms. Gambles obtaining an anti-tank gun, an M-203 (a type of grenade launcher), and a bottle containing bird flu taped to an M-100 (a type of explosive device) to facilitate his escape from prison.  At his hearing, Plaintiff claimed that he wrote this letter to test the prison system and determine whether prison officials were monitoring his mail.  *See* Dkt No. 46-5, Exhibit "B" attached thereto, Plaintiff's letter to Wendy Gambles.   In the letter, Plaintiff makes reference to the possibility that prison officials are reading his mail.  *See id*.

The hearing officer found Plaintiff guilty of violent conduct, attempting to introduce

explosives into the prison, soliciting items to be smuggled into prison, harassment, and threatening behavior. *See* Dkt. No. 46-5, Exhibit "D" attached thereto, Tier III hearing decision. Plaintiff commenced an Article 78 proceeding to review the Tier III decision; the Article 78 Judge affirmed. *See* Dkt. No. 76, Exhibit "7" attached thereto, Article 78 decision, at 4.

Before sending this letter, Plaintiff had a history of escape from prison. He had made several comments regarding escape to the effect that he had nothing to lose by attempting escape again in the future. *See* Dkt. No. 76, Exhibit "8" attached thereto. In addition, Plaintiff had a history of contacting friends outside of prison to try to help him escape. In 1992, while incarcerated in the Chautauqua County Jail, Plaintiff conspired with his girlfriend to smuggle a handcuff key to him in order to facilitate his escape. *See id*.

Given Plaintiff's history of escape, his history of soliciting outside help to facilitate escape, and his comments regarding future escape, monitoring Plaintiff's mail appears to meet a legitimate penological interest of maintaining order and ensuring that Plaintiff remain in prison. Therefore, the Court finds that Defendants examined Plaintiff's mail pursuant to a legitimate penological purpose. Accordingly, the Court respectfully rejects Magistrate Judge Peebles' recommendation in this regard and grants Defendants' motion to dismiss Plaintiff's twenty-fourth cause of action.

### K.      Conditions of confinement

The Eighth Amendment prohibits inhumane conditions of confinement. *See Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). Just like medical indifference claims, claims for unconstitutionally inhumane conditions of confinement must satisfy an objective and a subjective requirement. First, the conditions must be serious from an objective point of view; and the plaintiff

must demonstrate that, subjectively, prison officials acted with deliberate indifference.  *See Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (quotation omitted).  Deliberate indifference exists where an "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)

The Second Circuit has held that allegations of unsanitary conditions may support an Eighth Amendment claim.  *See Gaston*, 249 F.3d at 165-66 (denying defendants' motion for summary judgment as to plaintiff inmate's claims of frigid temperatures, rodent infestation in his cell and collections of human waste and sewage water directly in front of his cell); *Wright v. McMann*, 460 F.2d 126, 128-29 (2d Cir. 1972) (reversing the district court's decision to dismiss the plaintiff's claims that arose from spending eleven days, and, at another time, twenty-one days, naked or nearly naked, in a cold cell with only a toilet and washbowl and no hygienic materials or bedding).

Courts have ruled that, although the denial of hygiene products for an extended period of time may support a plausible Eighth Amendment claim for the denial of basic necessities, a two-week long deprivation is not sufficient.  *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003). Courts have also held that *de minimis* deprivations will rarely support a finding of an Eighth Amendment violation.  *See, e.g., Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000); *Govan v. Campbell*, 289 F. Supp. 2d 289, 299 (N.D.N.Y. 2003).

Given the rulings in *Gaston* and *Wright*, Plaintiff has plausibly alleged Eighth Amendment violations on the part of Defendants Allan and Bosco, even though he was only subjected to these conditions for three days.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and

Recommendation and denies Defendants' motion to dismiss Plaintiff's fifteenth cause of action.

Regarding Plaintiff's nineteenth cause of action, Magistrate Judge Peebles characterized this claim as a retaliation claim, as opposed to an Eighth Amendment claim, because Plaintiff's cause of action referred to paragraph thirty-two of the complaint, wherein Plaintiff described his move to a cell traditionally reserved for assaultive and disruptive inmates. *See* Report-Rec. at 49. Plaintiff alleged that the cell had feces-smeared walls and was located near mentally disturbed inmates who created continuous noise and further unsanitary conditions. *See id*. However, the essence of this cause of action is Plaintiff's contention that Defendant Allan transferred him to this cell as a retaliatory measure for complaints that Plaintiff had made about the conditions at Clinton. *See id.* Upon review, paragraph thirty-two of the complaint appears to be primarily concerned with the retaliatory motive behind the transfer. The Second Circuit has ruled that cell changes may form the basis of a retaliation claim. *See Holmes*, 2006 WL 851753, at *15. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and denies Defendants' motion to dismiss Plaintiff's nineteenth cause of action.

As to Plaintiff's twenty-first cause of action, given the findings in *Trammell*, Plaintiff's allegation that he received new hygiene products every two weeks is insufficient to state a plausible Eighth Amendment cause of action. Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants Defendants' motion to dismiss Plaintiff's twenty-first cause of action.

Regarding Plaintiff's twenty-fifth cause of action, Plaintiff's allegation that Defendants failed to fix malfunctioning water pipes, resulting in noise which interrupted his sleep, fails to meet the objective element of an Eighth Amendment inquiry. Although undoubtedly annoying, such

conditions do not evince a serious risk of harm and do not rise to the level of an Eighth Amendment

violation. *See, e.g., Mabery v. Keane,* No. 95 Civ. 1093, 1998 WL 148386, *8 (S.D.N.Y. Mar. 30,

1998) (finding that an inmate's allegation that he had to breathe fumes from nearby running raw

sewage was insufficient to state an Eighth Amendment cause of action); *Giglieri v. New York City*

*Dep't of Corr.*, No. 95 CIV. 6853, 1997 WL 419250, *2, *4 (S.D.N.Y. July 25, 1997) (finding that

exposure to secondhand smoke is not a sufficient basis for an Eighth Amendment claim).

Accordingly, the Court adopts Magistrate Judge Peebles' Report and Recommendation and grants

Defendants' motion to dismiss Plaintiff's twenty-fifth cause of action.


**L.     Procedural due process**

To maintain a claim for procedural due process deprivation, an inmate must allege that

prison officials deprived him of a liberty or property interest. *See Tellier v. Fields*, 280 F.3d 69, 79-

80 (2d Cir. 2000) (quotation omitted).

Here, Plaintiff alleged that he sustained a loss of procedural due process when Defendant

Miller conducted a Tier II hearing in Plaintiff's absence.  The maximum period of disciplinary SHU

confinement that officials may impose after conducting a Tier II hearing is thirty days.  *See* 7

N.Y.C.R.R. § 253.7(a)(1)(iii).  Absent the pleading of special circumstances that would constitute a

significant and atypical deprivation in relation to the ordinary incidents of prison life, a period of

disciplinary SHU confinement of thirty days or less does not represent a liberty interest under the

Due Process Clause of the Fourteenth Amendment.  *See Palmer v. Richards*, 364 F.3d 60, 65-66 (2d

Cir. 2004) (noting that "we have affirmed dismissal of due process claims only in cases where the

period of time spent in SHU was exceedingly short - less than . . . 30 days"); *Rodriguez v.*

*McGinnis*, 1 F. Supp. 2d 244, 248 (S.D.N.Y. 1998) (holding that "'[t]he decisions of the Second

Circuit are unanimous that keeplock . . . confinement of 30 days or less in New York prisons is not

"atypical or significant hardship" under *Sandin*'" (quotation and other citations omitted)).

> Here, Plaintiff's complaint lacks any allegation regarding the penalty imposed as a result of

the Tier II hearing, nor does it include allegations demonstrating any conditions he may have

endured due to such punishment.  Again, the Tier II hearing, by New York State regulation, cannot

impose a penalty that would implicate Plaintiff's due process rights under the Fourteenth

Amendment.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and

Recommendation and grants Defendants' motion to dismiss Plaintiff's twentieth cause of action.

**M.       Personal involvement of supervisory officials**

> The ""'personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under [section] 1983[.]'""  *Johnson v. Wright*, 234 F. Supp. 2d

352, 362-63 (S.D.N.Y. 2002) (quotation omitted).  To prevail on a § 1983 cause of action against an

individual, a plaintiff must demonstrate the existence of a tangible connection between the

constitutional violation alleged and the particular defendant.  *See Bass v. Jackson*, 790 F.2d 260,

263 (2d Cir. 1986).

> To sufficiently allege personal involvement on the part of an individual defendant who is a

supervisor, a plaintiff must demonstrate that

> > (1) the defendant participated directly in the alleged constitutional
> > violation, (2) the defendant, after being informed of the violation . . .
> > failed to remedy the wrong, (3) the defendant created a policy or
> > custom under which unconstitutional practices occurred, (4) the
> > defendant was grossly negligent in supervising subordinates who

> committed the wrongful acts, or (5) the defendant exhibited deliberate
> indifference to the rights of [the alleged victim] by failing to act on
> information indicating that unconstitutional acts were occurring.

*JG & PG v. Card*, No. 08 Civ. 5668, 2009 WL 2986640, *7 (S.D.N.Y. Sept. 17, 2009) (quoting

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Each of the Defendants named in this cause of action serves DOCS in a supervisory

capacity, and they are all named only in the fourteenth cause of action.  In this cause of action,

Plaintiff alleges in conclusory terms that these three Defendants conspired to keep Plaintiff in

administrative segregation to punish him for the crimes of his conviction.  *See* Second Amended

Complaint.  Plaintiff expands on this slightly in the body of his complaint, stating that he "has

continually petitioned" these Defendants regarding his confinement in Administrative Segregation.

*See id.* at ¶ 25.  Even if true, these allegations are insufficient to establish the requisite level of

personal involvement on the part of Defendants Fischer, Roy, and LeClair.  *See Greenwaldt v.*

*Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, *4 (S.D.N.Y. Apr. 19, 1995) (holding that "it is

well-established that an allegation that an official ignored a prisoner's letter of protest and request

for an investigation of allegations made therein is insufficient to hold that official liable for the

alleged violations" (citations omitted)).

Moreover, to the extent that Plaintiff's allegation that these Defendants "conspired" to keep

him in SHU represents a conspiracy claim, such a claim fails.  To maintain a conspiracy claim under

§ 1983, a plaintiff must show that a defendant "'acted in a willful manner, culminating in an

agreement, understanding, or "meeting of the minds", that violated the plaintiff's rights . . . secured

by the Constitution or the federal courts.'"  *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)

(quotation omitted).  Conclusory or vague allegations of conspiracy are not enough to state a claim

for relief under § 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (citations omitted).

Here, Plaintiff alleges in the most vague and conclusory of terms that Defendants Fischer, Roy, and

LeClair conspired against him.  Accordingly, the Court adopts Magistrate Judge Peebles' Report and

Recommendation and grants Defendants' motion to dismiss Plaintiff's fourteenth cause of action.


**N.      Denial of contact visits**

Inmates do not have a constitutional right to contact visits.  *See Zimmerman v. Burge*, No.

06-cv-0176, 2008 WL 850677, *2 (N.D.N.Y. Mar. 28, 2008) (citation omitted).  Plaintiff brings this

cause of action under the Eighth Amendment.[11]  As stated earlier, an Eighth Amendment claim has

an objective and a subjective element.  *See Wright*, 554 F.3d at 268.  The objective element focuses

on the effect of a defendant's conduct, while the subjective element focuses on the defendant's

motive.  *See id*.

Plaintiff discusses no facts that would indicate that the effects of this denial had an

objectively severe effect on his mental and emotional well being.  Plaintiff also does not allege any

facts to indicate that Defendant Artus acted with a sadistic or malicious intent when he denied

Plaintiff the privilege of receiving contact visits.  Plaintiff's second amended complaint merely

contains a conclusory allegation that Defendant Artus acted maliciously.  Accordingly, the Court

grants Defendants' motion to dismiss Plaintiff's sixth cause of action.

---

[11] Typically, courts address the issue of contact visits with reference to the Fourteenth
Amendment.

**O.      John Doe Defendant**

Under Rule 4(c)(1) of the Federal Rules of Civil Procedure, the plaintiff must serve a

summons and complaint upon each defendant within 120 days of the filing of the complaint.  *See*

Fed. R. Civ. P. 4(m).  Where a plaintiff does not properly serve a defendant in accordance with the

Federal Rules of Civil Procedure, the court will, upon motion or its own initiative, dismiss the case

without prejudice as to that defendant.  *See id*.; *see also Cooks v. Delpiano*, No. 9:07-CV-00765,

2008 WL 4186337, *1 n.1 (N.D.N.Y. Sept. 10, 2008); *Pravda v. City of Albany*, 178 F.R.D. 25, 26

(N.D.N.Y. 1998).

Plaintiff alleged that the John Doe Defendant did nothing to help him when he was confined

in the cold and unsanitary cell, about which he made an Eighth Amendment claim.  Specifically,

Plaintiff alleged that the John Doe Defendant mocked him when he requested that the windows be

closed because snow was gathering on the floor of the cell.  *See* Second Amended Complaint at

¶ 29.  However, despite the passage of nearly three years since his original complaint and more than

one year since filing his second amended complaint, Plaintiff has not yet identified or served the

John Doe Defendant.  Accordingly, the Court dismisses Plaintiff's sixteenth cause of action.


**P.      Deprivation of the ability to file grievances**

The Constitution does not require the state to create inmate grievance programs.  *See*

*Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, *13 (N.D.N.Y. July 13, 2011) (citation

omitted).  As a consequence, allegations that prison officials violated such procedures will not

support a claim under § 1983.  *See id.*  Further, should prison officials ignore or scuttle a grievance

that raises constitutional claims, an inmate can petition the courts directly for redress.  *See id.* (citing

*Flick v. Alba*, 932 F.2d 728, 728 (8th Cir. 1991)).

Plaintiff alleges that Defendant Brousseau "blocked" some of Plaintiff's grievances, in that she "picked and chose" which would proceed and which would not. *See* Second Amended Complaint at ¶ 42. The Constitution does not mandate a grievance procedure, and Plaintiff has the opportunity to petition the courts directly regarding any constitutional violations he feels he has sustained, an option with which he is obviously comfortable. Accordingly, the Court dismisses Plaintiff's twenty-eighth cause of action.

**Q.      Leave to replead**

Courts must construe *pro se* pleadings liberally and interpret them "'to raise the strongest arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quotation omitted). Typically, courts do not dismiss *pro se* complaints without granting leave to amend at least once if there is any indication that a valid claim may be stated. *See Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) (citations omitted); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

Magistrate Judge Peebles, in deference to Plaintiff's *pro se* status, recommended that the Court give Plaintiff a final opportunity to amend his complaint to cure any deficiencies, with the exceptions of the seventeenth (false misbehavior report) and eighteenth (lost property) causes of action. Magistrate Judge Peebles reasoned that neither of those causes of action presents even a potentially conceivable constitutional claim, and, therefore, neither could be rescued by even the most skillfully worded amendment.

There is no indication that Magistrate Judge Peebles' reasoning is clearly erroneous. Accordingly, the Court adopts this portion of his Report and Recommendation and allows Plaintiff to amend his second amended complaint, except for the seventeenth and eighteenth causes of action.


## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Defendants' motion to dismiss Plaintiff's fifth, eleventh, thirteenth, fourteenth, seventeenth, eighteenth, twentieth, twenty-first, and twenty-fifth causes of action, and Defendants' motion to dismiss those causes of action is **GRANTED**; and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Plaintiff's first, third, fourth, seventh, tenth, fifteenth, nineteenth, and twenty-sixth causes of action and Defendants' motion to dismiss those causes of action is **DENIED**; and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **REJECTED** as to Plaintiff's eighth, ninth, twelfth, twenty-second, twenty-third, twenty-fourth, and twenty-seventh causes of action and Defendants' motion to dismiss those causes of action is **GRANTED**; and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** as to Plaintiff's second cause of action as it relates to Defendants Kirkpatrick and Marinaccio and Defendants' motion to dismiss Plaintiff's second cause of action against those Defendants is **DENIED**; and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **REJECTED** as to Plaintiff's second cause of action as it relates to Defendant Henderson and Defendants' motion to dismiss Plaintiff's second cause of action against Defendant Henderson is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's sixth, sixteenth, and twenty-eighth causes of action is **GRANTED**; and the Court further

**ORDERS** that Magistrate Judge Peebles' Report and Recommendation is **ACCEPTED** with respect to providing Plaintiff with an opportunity to replead and, therefore, **within thirty (30) days**

**of the date of this Memorandum-Decision and Order**, Plaintiff may file a third amended complaint to cure the deficiencies in those causes of action that the Court has dismissed, with the exception of his seventeenth and eighteenth causes of action;[12] and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED.**

August 29, 2011
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[12] In sum, Plaintiff's first, third, fourth, seventh, tenth, fifteenth, nineteenth, and twenty-sixth causes of action, as well as his second cause of action as it relates to Defendants Kirkpatrick and Marinaccio, are sufficient to withstand Defendants' motion to dismiss. On the other hand, Plaintiff's fifth, sixth, eighth, ninth, eleventh, twelfth, thirteenth, fourteenth, sixteenth, seventeenth, eighteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-seventh, and twenty-eighth causes of action, as well as his second cause of action as it relates to Defendant Henderson, are insufficient to withstand Defendants' motion to dismiss. However, with the exception of Plaintiff's seventeenth and eighteenth causes of action, the Court will provide Plaintiff with an opportunity to amend his complaint to cure any deficiencies in the dismissed causes of action.